**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO.1:23MC12; 1:23MC13;** |
| | ) | **1:23MC14; 1:23MC15** |
| | ) | |
| Petitioner, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | |
| **GBX PR LLC.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Respondent. | ) | |

**CHRISTOPHER A. BOYKO, J:**

On March 21, 2023, the United States of America filed its Petition to Enforce a

Summons issued by the Internal Revenue Service ("IRS") upon Respondent GBX PR, LLC.  On

July 6, 2023, the Court granted Petitioner's Motion to Consolidate three other Petitions to

Enforce IRS summons issued upon the same service agent.   All four actions involve the same

IRS agent and the same registered agent for Respondent GBX PR LLC.  The four summonses at

issue seek documents and communications from GBX regarding different properties in New

Orleans and Jacksonville held by four different taxpayers.   In addition, the arguments for and

against enforcement are identical as each concern tax deductions for donations of historic

easements.

**Factual Background**

According to the IRS, it has issued summons for documents in the possession of GBX PR

LLC. relating to an IRS tax liability investigation of taxpayers The Natchez New Orleans LLC

(23MC 12), Joy Theater (LLC) (23MC13), 411-413 S. Rampart LLC (23MC14) and Axis 404

Julia LLC (23MC15), each for the tax year ending December 31, 2019.  GBX PR through its agent, Kelly Hoy, is the registered agent for each of the above entities and GBX is the above taxpayers' representative.  GBX PRLLC is the Partnership Representative of all four Taxpayers and is wholly owned by GBX Group LLC.  GBX Group and its affiliates focus on acquisition, preservation and rehabilitation of historic buildings in urban centers.  GBX Group assists taxpayers in utilizing historic preservation easements and other tax and non-tax incentive programs to raise capital used in the rehabilitation and preservation of these historic buildings. The IRS has audited eighty-two entities that GBX has assisted in this rehab work.  Tania Malaga is the IRS investigating agent of all the above taxpayers who has requested the materials from GBX relating to the above entities.

According to the Petition to Enforce (all four Petitions to Enforce are identical in all respects with the only exception being the identity of the targeted taxpayer), on June 9, 2022, the IRS served summons on GBX PR, instructing it to appear and provide documents to the IRS at its Brooklyn, New York office on July 7, 2022 or produce the requested documents on or before July 7, 2022.  Hoy sent a letter dated July 6, 2022, in response, contending the summons was improper and that the information sought was "functionally within the IRS's possession."  As a result, no one appeared for GBX nor were any documents produced by July 7, 2022.

On September 7, 2022, the IRS issued a last chance letter to GBX PR, requiring the appearance of Hoy or the production of the summoned documents by September 16, 2022, at the IRS offices in Mountainside, New Jersey.  Hoy re-sent her prior response and again did not appear and did not produce the requested documents.  The IRS subsequently filed with the Court its Petitions.

2

In its Response, GBX PR contends that in December 2019, taxpayers donated historic easements and development rights in certain historic buildings with three donated to The Preservation Resource Center of New Orleans and one donated to the Florida Trust for Historic Preservation.   Taxpayers then claimed a tax deduction for the value of the donations.

GBX PR alleges that the IRS notified GBX PR it was conducting an investigation of taxpayers and subsequently issued multiple information document requests.  On January 11, 2022, IRS Agent Malaga issued an information document request containing seventy-four individual document requests, including requests for correspondence with various third parties, but without any limit to time or scope.  GBX PR responded on January 13, 2022, with its concerns over the breadth of the document request.  It further relayed to the IRS that a forensic search of the responsive emails totaled over 17,581 items and 516 email boxes for Taxpayer.  For all four taxpayers the documents totaled over 71,393 mail items and 96.46 GB of data.  GBX requested that Agent Malaga narrow the requests.

In a follow up conversation, GBX PR outlined the challenges it faced in complying with the IRS summons.  First, given the size of the document request, GBX PR would need to acquire large capacity external hard drives to the load the emails.  Second, the IRS informed GBX PR its employees could not open Outlook files and thus, GBX would need to individually convert each to a PDF form.  However, Agent Malaga did not modify her request but instead wanted "to see everything."  As a result, GBX PR argues that it did in fact provide a response to each of the seventy-four individual requests by offering to make all correspondence available for the IRS's review at the GBX office in Cleveland during business hours.  The IRS did not accept this offer.

Instead, on April 27, 2022, Agent Malaga issued a second document request seeking the same correspondence as before and GBX PR repeated its concerns and made the same

3

inspection offer which was again rejected by the IRS.   In response, the IRS issued its June 9, 2022 summons to all four taxpayer which included the following requests:

> 1.      All correspondence between appraisers, the donor, and the donee of the Conservation Easement limited to the time frame between 1/1/18 to 9/16/20.

> 2.      Copies of all correspondence, electronic or otherwise, describing or affecting any use or potential use of the Property or parcels in the vicinity of the Property between or among any, some, or all of the identified parties (partners, investors, third parties, promoters, and donees) limited to the time frame between 1/1/18 to 12/31/19.

> 3.      All correspondence and documents regarding the soliciting and acquiring of 99% membership interest by or on behalf of investor members, "GBX Fund Investment 2019 LLC", limited to the time frame between 1/1/18 to 12/31/19.

Notably, the summonses now included time limitations of less than three years. Upon the issuance of the summons, GBX PR responded within the thirty day period that it had made available all correspondence within taxpayers' possession and that the offer was still open to come to its offices and review the documents.  In response, the IRS sent a letter requesting compliance with the June 9, 2022 summons.

On March 10, 2023, Agent Malaga issued the IRS's Preliminary Partnership Examination Changes and Imputed Underpayment notifying Taxpayer Natchez and GBX PR that the IRS was not allowing deductions claimed by taxpayer and included an adjustment of $20,103,800 to taxpayers' taxable income and imposed a penalty of $5,578,805.   The IRS included a one hundred twenty-one-page Explanation which included its analysis and the facts it relied on in reaching its adjustment and penalty determinations.  On March 21, 2022, the United States filed its Petition to Enforce the June 9, 2022 Summons.  On March 28, 2023, Agent Malaga conducted an audit closing conference on Natchez.

Regarding the three other taxpayer cases before the Court, the following underpayments and penalties were assessed:

> 1:23mc13 Taxpayer = Joy Theater LLC
> April 27, 2023 - IRS Summary Report issued
> Understatement of $16,502,305
> Penalty of $4,579,390
> Imputed Underpayment of $6,105,853
>
> 1:23mc14 Taxpayer= 411-413 S. Rampart LLC
> March 10, 2023 - IRS Summary Report issued
> Understatement of $12,924,000
> Penalty of $3,586,410
> Imputed Underpayment of $4,781,880
>
> 1:23mc15 Taxpayer= Axis 404 Julia LLC
> May 4, 2023 - IRS Summary Report issued
> Understatement of $11,324,000
> Penalty of $3,142,410
> Imputed Underpayment of $4,189,880

### Respondent's Arguments Against Enforcement

According to Respondent, the summonses are invalid and cannot be enforced as they fail to satisfy the requirements established by United States Supreme Court in *United States v. Powell*.  In *Powell*, the United States established four factors for a Court to consider when asked to enforce an IRS summons.  The IRS must show: (1) "that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to the purpose, (3) that the information sought is not already within the Commissioner's possession, and (4)  that the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect."  *United States v. Powell,* 379 U.S. 48, 57–58, 85 S. Ct. 248, 255, 13 L. Ed. 2d 112 (1964).

Under 26 U.S.C. § 7602(a), the IRS has authority to issue summons "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability." §§ 7402(b) and 7604(a) authorize the IRS to bring an enforcement action on the summons in federal courts.

According to Respondent, the summonses are unenforceable as they lack a proper purpose under § 7602(a). Agent Malaga attests in her Declaration that the documents sought are for the investigation of taxpayer liability for each of the four named taxpayers for the tax year 2019. However, the IRS has already concluded its investigation of each of the taxpayers at issue and has issued summary reports for each wherein it determined their underpayments and issued tax penalties. Summary reports, closing conferences and notices of proposed adjustments have all taken place already and these occur at the end of an audit. Therefore, the IRS has concluded its investigation and determined the liability. Requiring a third party to produce documents related to the same serves no legitimate purpose.

Respondent further argues that the information sought is irrelevant or at least the IRS has failed to show its relevance. Mere assertion of relevance is insufficient; rather the IRS must proffer a minimal showing of specificity as to why it needs the requested materials and what information it expects to find from the same. In fact, the information sought by the IRS does not appear to be related to the underlying transaction at issue, which is the determination of deductibility under 26 U.S.C. §170 (concerning deductibility of charitable donations) or the value of a donation. Instead, the summonses seek information on "the use or potential use" not only of the property itself but parcels in the vicinity of the same. They further seek investment

6

information regarding third parties and a different entity.  The IRS bears the burden of showing

relevance and failure to do so must result in denying the Petition to Enforce.

Because Respondent has already proffered to allow the IRS to come to its offices and

review all the requested communications, the documents sought are in the constructive

possession of the IRS.  Fed. R. Civ. P. 34(b)(2)(B) is satisfied by an offer to allow inspection

and copying.  Moreover, Respondent has offered the files as kept in the ordinary course of its

business which further satisfies Rule 34(b)(2)(E), therefore, Respondent should not be

compelled to convert each email to a PDF file.  Nor is it practical for Respondent to personally

view all 71,000 plus documents to determine if any of them contain privileged materials.

Respondent argues the IRS failed to provide adequate notice however, they do not make

any subsequent argument in support, but merely assert the IRS relied on the wrong exception

under § 7609(c)(2)D) regarding notice.

Lastly, Respondent contends enforcing the summonses would result in an abuse of

process as the IRS had already made its tax liability determinations regarding the taxpayers at

issue.  Instead, it appears the IRS is merely using the summons as preliminary discovery in

anticipation of Tax Court proceedings should any taxpayer challenge the liability findings of

underpayment and tax penalties.  This end-around of Tax Court discovery procedures is an abuse

of process.

Katherine Jordan, GBX Group LLC's Director of Tax Controversy, attests at paragraph

28 of her Declaration: "On May 17, 2023, I held an audit closing conference for taxpayers Axis

404 Julia LLC and Joy Theater LLC with Ms. Malaga and Ms. Young.  During that conference,

Ms. Malaga stated that **the taxpayers' reports were finalized and would not be returned to the**

***IRS audit team regardless of any information produced in response to the summons enforcement actions.***

In support of its Petition to Enforce Summons, the IRS argues it has taken all of the necessary administrative steps and that the requested documents are not already in the IRS's possession.  The IRS further asserts that although there has been a summary report issued, a closing conference held and a Notice of Proposed Partnership Adjustments issued, none of these constitute a final, irrevocable determination of a taxpayer's liability.  As a result, the information is still relevant and the purpose for which they were issued is proper as the investigation of tax liability is not final.  (Malaga testimony ECF # 14 pg 17-19).

The IRS contends Congress has endowed the IRS with expansive information gathering authority.  This authority allows the IRS to investigate any suspicion that the revenue laws are being violated but also to assure the IRS that a taxpayer is not violating revenue laws. The law places the burden on the IRS to make a prima facie showing of enforceability and that burden is minimal and may generally be established by the affidavit/declaration of the investigating agent who issued the summons.  Once the IRS meets its prima facie burden, the party responding to or opposing the summons must prove that enforcement would be an abuse of the court's process. This burden has been described as a heavy one.

## <u>LAW AND ANALYSIS</u>

The Court begins its analysis with 26 U.S.C. § 7602, which provides the IRS the authority to issue summons for clearly defined purposes.  Those purposes are described as:

> **(a) Authority to summon, etc.**--For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized-

**(1)** To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

**(2)** To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
**(3)** To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

**(b) Purpose may include inquiry into offense.** --The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

Thus, a legitimate purpose under the statute would be 1) to ascertain the correctness of any return, 2) making a return when none has been made or 3) determining the liability of any person for any internal revenue tax liability or collecting any such liability.  According to the IRS the legitimate purpose involved in these summonses is an investigation into taxpayers' federal income tax liability.  Agent Malaga testified and declared that the summonses were issued in furtherance of her tax liability investigations.  (Malaga Declaration ECF # 1-2 para 2-3, 14).  Respondent acknowledges that investigation of tax liability is a legitimate purpose for issuing summons but contends that the investigation is concluded because the IRS issued summary Reports and NOPPAs.  As a result, there is no legitimate purpose because Malaga's investigation has concluded.  However, the IRS argues that neither the Reports nor the NOPPAs are final and conclusive and courts have enforced summons issued even after the IRS has issued a Final Partnership Adjustment, which has not yet occurred here.

Undoubtedly, the IRS summons authority is broad and expansive.  "[T]he summons power of the IRS under the Code is quite broad, and courts are constrained to exercise caution before circumscribing the summons authority." *PAA Mgmt., Ltd. v. United States,* 962 F.2d 212,

216 (2d Cir. 1992)   *See also United States v. Arthur Young & Co.,* 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) (noting that "the very language of § 7602 reflects ... a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry.  In light of this explicit statement by the Legislative Branch, courts should be chary in recognizing exceptions to the broad summons authority of the IRS").

In its Opinion reversing an order quashing an IRS summons, the Second Circuit in *PAA Management* cited favorably the Seventh Circuit.  In *United States v. Gimbel,* 782 F.2d 89 (7th Cir.1986), after issuing a summons, the government sent the taxpayer a deficiency notice and moved for enforcement of the previously served summons.  Similar to the arguments made by Respondent here, the respondent in *Gimbel* argued that the summons served no legitimate purpose because the deficiency notice had been sent and the IRS therefore had "already determined" liability. *See id.* at 90.   The Seventh Circuit rejected this argument holding that, while it might be proper to quash a summons "if, for example, the summons had become stale or the investigation had become mooted by *a final, irrevocable determination of the taxpayer's liability for the years in question,*" there was nothing improper about the summons where the amount of the deficiency was still subject to redetermination.  More importantly for our purposes, the case in *Gimbel* involved a Tax Court proceeding which is procedurally further down the road than where the parties are in the case at bar.  Nonetheless, the Seventh Circuit said this was not an abuse of the process as Respondent's tax liability was not finally determined, thus the summons was for a legitimate purpose.  See also, *Twin Palms Resort, LLC ex rel. Harbour v. United States,* 676 F. Supp. 2d 1350, 1355 (S.D. Fla. 2009)("the government still has a legitimate, recognized need for the information sought by the summons. The IRS could change the Harbours' tax liability through the appeals process or before (and perhaps even after) issuance

10

of the notice of deficiency. The Tax Court could also redetermine the Harbour's tax liability. Therefore, the IRS had a legitimate purpose for issuing the summons, even though it was issued after the examination report.").

In light of the above authority, the Court finds the IRS summons was issued for a legitimate purpose, the investigation of tax liability, as the final, irrevocable determination of that liability has not yet been made.

**<u>Relevancy</u>**

The second of the *Powell* factors for the Court to consider is the relevancy of the documents sought. 26 U.S.C. § 7602(a)(1) authorizes the IRS to issue summons "to examine any books, papers, records, or other data which ***<u>may be relevant</u>*** or material to such inquiry." (Emphasis added). Here, the IRS summonses seek correspondence between the appraisers, donee and donor of the conservation easements. Correspondence describing or affecting the use or attempted use of the property or parcels in the vicinity of the Property concerning the parties identified in the summons and correspondence and documents regarding the soliciting and acquiring of 99% membership interest by or on behalf of investor member, "GBX Fund Investment 2019 LLC". At the June 22, 2023 hearing, Agent Malaga testified that the IRS "usually will examine all syndicated conservation easements" like the ones before the Court, "as there tends to be a lot of abusive transactions that occur in these syndicated conservation easements." (ECF # 14 pg 7).

Agent Malaga further testified that the correspondence was needed to "get the full picture of what actually transpired with this transaction." (*Id* at pg. 10). She continued, "we want to make sure that we have the full picture of what negotiations took place, what agreements that

11

were filed.  If there were any promises, we want to make sure we know who was involved, which third parties.  We want to make sure that, if necessary, we might have to contact those third parties for any documents that we feel are important for the examination relating to these transactions.  It's just to get an in-depth analysis so we are aware of what actually transpired for this conservation easement."  (*Id*.)

Regarding correspondence on the Property or concerning those in the vicinity of the Property, Agent Malaga testified, "the due diligence for these properties usually takes place about one to two years before the actual conservation easement.  So I want to get a full picture of what actually transpired.   I want to see who was involved, if there are any related parties. Again, if there are any negotiations, any agreements, I would like to have that information.  Also, it is very important to verify if there are any related parties involved.  Specifically, with the parcels.  So, for example, if you have a parcel that's right next to my property in question, that would be considered a contiguous parcel, and that would actually affect valuation."  (*Id* pg 11).  "We want to make sure that we know which appraisers were actually hired, who were consultants, if there were any negotiations. We want to make sure that we have all the documents in our possession so we could do a thorough analysis.  It's just to get an overview exactly of if there were any promises made that were not stated elsewhere that would help our examination.  And, again, just to see who was involved, which consultants, which -- any other third parties that we're not aware of that might be relevant to the examination."  (*Id*. Pg 13).

Finally, when questioned on the third summons' request for correspondence related  to soliciting and acquiring membership interest in the GBX Fund Investment Agent Malaga testified, "Again, this is just to basically get a full picture of what actually transpired, what negotiations took place in order to purchase this property, what discussions did they have with

the original property owner, whoever was involved with this transaction, if they hired any attorneys, appraisers to do any valuations that we're not aware of, how did they come up with the purchase price.  This information is very important, again, because the due diligence does take place at least one to two years before the conservation easement.  And this information is very valuable to see if there were any promises made to the investors, the property owner, whoever was involved.  It is very important."  (*Id*. pgs. 13-14).

Respondent challenges the relevancy of the documents sought.  According to the Sixth Circuit, "the question is whether the records requested "might" throw light upon the correctness of a return." *United States v. Monumental Life Ins. Co.,* 440 F.3d 729, 735–36 (6th Cir. 2006) citing *Arthur Young,* 465 U.S. at 814–15 & n. 11, 104.  The Sixth Circuit has described the IRS burden as "very low." *Monumental,* 440 F.3d at 736 quoting *United States v. Noall,* 587 F.2d 123, 125 (2d Cir.1978).  But the Sixth Circuit recognized that "judicial protection against sweeping or irrelevant orders is 'particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party.'"  *Monumental,* 440 F. 3d at 736 quoting United States v. *Theodore,* 479 F.2d 743, 754 (4th Cir. 1973).

Respondent contends the mere assertion of relevance by an IRS agent without more specificity will not meet the IRS's burden.  Here, Respondent contends the IRS's Petitions fail to discuss the relevance of the discovery sought.   At the evidentiary hearing, Agent Malaga only testified "why" she wanted the documents but she failed to discuss how the documents sought were relevant to the issues raised in particular the tax liability of parties seeking conservation easements.

13

Petitioner argues that the relevance determination here is something less than the standard under the Federal Rules of Evidence.  "[T]he Supreme Court has clarified that 'even *potential* relevance' is sufficient."  *Byers v. United States of America,* 963 F.3d 548, 558 (6th Cir. 2020) quoting *Arthur Young & Co.*, 465 U.S. at 814. "[T]he Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *Id.*

Given the very low threshold the IRS must meet, Agent Malaga's testimony that the records sought concerned third parties or potential third parties involved in the easement agreements and was intended to determine if any promises were made concerning easements and the valuations of nearby properties satisfies the IRS's prima facie burden to show that the documents requested may be relevant and supports the IRS Motion.

### Whether the documents are in the Possession of the IRS

Agent Malaga testified that the documents sought are not in the possession of the IRS, but Respondent claims the IRS has constructive possession because Respondent has offered to allow the IRS access to the records at Respondent's place of business.  This representation is not disputed by the IRS.

However, the IRS contends Respondent ignores the plain language of 26 U.S.C. § 7602 which allows the IRS to summon:

> Any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any person the Secretary may deem proper, ***to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give testimony, under oath, as may be relevant or material to such inquiry.***  (Emphasis added).

14

Given the clear statutory authority conferred upon the IRS by 26 U.S.C. § 7602 the Court holds that Respondent's offer to allow the IRS to obtain the documents at Respondent's office does not comport with Section 7602 and does not confer constructive possession on the IRS. Thus, this *Powell* factor further supports enforcement.

### Compliance with Administrative Steps

Respondent does not contest the IRS's representation that the IRS has complied with all administrative steps.

### Abuse of Process

Lastly, Respondent contends that enforcement of the summons would constitute an abuse of the Court's process because the IRS has already determined the Taxpayers' liability and cannot impose any additional tax or penalties.  Agent Malaga testified that even if the Court enforces the summonses and the correspondence is produced, the cases will not be returned to her.  Instead, Respondent argues that the correspondence sought appears to be directed toward proceedings in Tax Court.  Moreover, Respondent notes that the IRS and GBX have a number of legal disputes pending that seek enforcement of summonses that serve no purpose with regard to the taxpayers they involve.

Petitioner argues that for the reasons already stated in the legitimate purpose analysis, the IRS summonses are not moot or unnecessary and therefore, do not qualify as an abuse of the court's process.   Furthermore, the IRS issued the summons long before the Summary Reports and NOPPAs were issued.  The IRS is statutorily required to close out its cases after a certain time period.  To allow Respondent to avoid production of the correspondence due to its own

failure to comply would circumvent the IRS's expansive information gathering authority granted by statute.

For the reasons already discussed by the Court under the legitimate purpose analysis, the Court finds the IRS's purpose in issuing the summonses was for a legitimate purpose and were not an abuse of process.   Moreover, Agent Malaga testified that the IRS carefully scrutinizes deductions for historic easements as there is broad abuse, therefore, the Court finds no evidence that the IRS summonses were issued for some harassing or otherwise nefarious purpose.

Therefore, the foregoing reasons the Court finds the *Powell* factors militate in favor of enforcing the IRS summons and the Court grants Petitioners' Petitions to Enforce.

The last issue to resolve is Respondent's contention that it was willing to comply with the summons but the IRS insisted that the correspondence be converted by Respondent to PDF files, which Respondent argues would be expensive and would require substantial work hours to accomplish.  The IRS responds that the Respondent may apply for reimbursement of its reasonable costs.  However, those costs relate to "personnel search time, computer costs, number or reproductions made and transportation costs."  (Summons ECF 1-1).  This does not appear to apply to the costs associated with converting the format in which the documents are kept by Respondent.   Respondent argues that Fed. Rule of Civil Procedure 34 allows them to provide the discovery in the form they are kept in the ordinary course of business.

Fed. R. Civ. P. 81(5) reads:

**(5) *Proceedings Involving a Subpoena.*** These rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings.

In the absence of any statutory authority otherwise, the Court holds the Federal Civil

Procedure Rules govern.   The IRS has provided no authority to the contrary.  In fact, "Federal

Rules of Civil Procedure, including the discovery provisions, are applicable in IRS summons

enforcement proceedings."  *United States v. Harris,* 628 F.2d 875, 880 (5th Cir. 1980).

Fed. R. Civ. P. 34 reads in pertinent part:

**(E)** *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
**(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
**(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
**(iii)** A party need not produce the same electronically stored information in more than one form.

Also, because the Court finds that the term  "parcels in the ***vicinity*** of the Property" is too

broad and ambiguous the Court Orders Respondent to provide "Copies of all correspondence,

electronic or otherwise, describing or affecting any use or potential use of the Property or parcels

***abutting*** the Property between or among any, some, or all of the identified parties (partners,

investors, third parties, promoters, and donees) limited to the time frame between 1/1/18 to

12/31/19.  This definition more closely reflects the information sought by Agent Malaga as

reflected in her testimony at the evidentiary hearing.   "Also, it is very important to verify if there

are any related parties involved. Specifically, with the parcels.  So, for example, if you have a

parcel that's right next to my property in question, that would be considered a contiguous parcel,

and that would actually affect valuation."  (ECF # 14 pg. 11).

The Court finds that subject to the above requirements, Respondent shall produce the

requested correspondence in the form they are kept in the usual course of business or in any

format to which the parties may agree upon.  The Court orders Respondent's attendance,

testimony and production of the books, papers, records, or other data as is required and called for by the terms of the summons before Revenue Agent Malaga or any other proper officer or employee of the Internal Revenue Service at such time and place as may be fixed by Revenue Agent Malaga, or any other proper officer or employee of the Internal Revenue Service.

IT IS SO ORDERED.


/s/ Christopher A. Boyko

_____

CHRISTOPHER A. BOYKO
United States District Judge